U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 2 0 2018
CLERK, U.S. DISTRICT COURT
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FALLON WAYNE HART, | § | |
| Petitioner, | § § § | |
| v. | § § | No. 4:16-CV-874-A |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § § | |
| Respondent. | § | |

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed on behalf of petitioner, Fallon Wayne Hart, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

**I. PROCEDURAL HISTORY**

On April 28, 2013, in Hood County, Texas, Case No. CR12428, petitioner entered guilty pleas in open court to three counts of aggravated assault of a public servant by threat with a deadly weapon, a firearm. (Clerk's R. 7; Reporter's R., vol. 2, 5.) Following a jury trial on punishment, the jury assessed his punishment at 99 years' confinement in TDCJ on each count. (*Id.*

at 32, 37, 40.) Petitioner appealed, but the Seventh District Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. Petitioner also filed a state postconviction application for writ of habeas corpus challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR,[1] Action Taken.) This federal petition for habeas-corpus relief followed.

Petitioner was charged with the offenses as a result of an incident that occurred in the early morning hours on January 21, 2013. At approximately 3:30 a.m. Granbury police officer Michael Holly observed a suspicious vehicle new Lake Granbury. There were two people in the vehicle, petitioner and Kristin Bishop. Officer Holly ran a driver's license check on both individuals and learned that petitioner had an outstanding warrant for a weapon charge in Taylor County, which contained a warning that petitioner was "armed and dangerous." Granbury police officer Zachary Anderson and Hood County sheriff's deputy Dustin Holden arrived to assist Holly. Petitioner refused to get out of the vehicle and eventually put it in gear and drove off. The officers pursued him into a housing subdivision where petitioner

---

[1]"SHR" refers to the state court record of petitioner's state habeas proceeding in WR-85,102-01.

ultimately crashed the vehicle. Officer Anderson was the first to locate the vehicle. As Anderson radioed in that he had found the vehicle, petitioner opened fire on Anderson's police vehicle with a AR-15 semiautomatic assault rifle. Anderson survived without injury. Petitioner, now on foot, broke into a home nearby, held the residents at gun point, and demanded their car keys. Petitioner fled in the residents' truck and as he drove past the officers, he fired another shot toward them. Petitioner was located hours later in a creek bed and arrested. (Resp't's Answer 3-6; Reporter's R., vol. 3, 13-23.)

## II. ISSUES

In two grounds, petitioner asserts that his trial counsel was ineffective because (1) he had a conflict of interest, simultaneously representing both petitioner and Kristin Bishop, his co-arrestee, and (2) he failed to object to the bailiff's order that none of petitioner's supporters could sit in the gallery behind the defense table. (Pet. 6, 8.)

## III. RULE 5 STATEMENT

Respondent believes that the petition is timely filed, that the petition is not subject to the successive-petition bar, and that petitioner has exhausted his state-court remedies as to his claims. (Resp't's Answer 6.) 28 U.S.C. §§ 2244(b), (d) & 2254(b)(1).

## IV. DISCUSSION

### A. Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal

4

Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Harrington,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2003).

Because petitioner fails to present clear and convincing evidence rebutting the state habeas court's factual findings, this court defers to those findings in the discussion below. 28 U.S.C. § 2254(e)(1).

## B. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington,* 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland,* 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's

5

conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state courts have adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101. *See also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citations omitted)).

Petitioner first claims that his trial counsel Richard

Haddox was ineffective because of his simultaneous representation of both himself and Kristin Bishop. (Pet. 6) Petitioner asserts that had Bishop, who was also arrested, been called to testify at his trial, she would have "provided powerful mitigating evidence." According to petitioner, counsel did not call Bishop to testify so that she would not incriminate herself and the state would drop the charges against her. (*Id.*; Pet'r's Mem. 12.) In support, petitioner presented the affidavits of his mother and step-father in the state habeas proceedings, wherein they aver that counsel did not inform them of the conflict of interest in representing both petitioner and Bishop on charges arising out of the same incident. (SHR 56-57.) He also presented Bishop's affidavit, wherein she states:

> I was arrested in Hood County, Texas, with Fallon Hart on January 21, 2013. I sought out local counsel to assist in my defense. I hired attorney Richard Hattox to represent me. I also asked if he would represent Fallon Hart. He agreed, but did not say anything to me about a conflict of interest. He did a good job on my case. I was only charged with drug possession and he got the case dismissed. I asked him if I could testify for Fallon Hart. He told me "no" and said I would be arrested if I did so.
>
> Had I been permitted to testify at Fallon Hart's trial, I would have appeared and told the jury that Fallon did not intend to hurt or kill anyone. Fallon suffers from a bipolar disorder. We had been using methamphetamine for several days before our arrest. The drugs made Fallon seem paranoid. He was acting insane. He threw my cell phone away and said I was a traitor. I think he was hallucinating, and he had suffered similar hallucinations the previous day and on earlier occasions.

7

> When he was stopped by the police, he just snapped
> I don't know if he was even aware the police were
> there. He stopped the car, then he ran off. He was
> running and firing behind him. He thought he was
> protecting me. He returned shortly. Immediately after
> he was arrested he expressed remorse to me about what
> happened.
>
> This conduct is not like the Fallon Hart I know.
> He is a good parent and very generous person with a
> good heart. He is very charismatic and is a good
> salesman. However, he had recently lost his job and his
> father was terminally ill. His car had burned up a few
> days before and he had lost his most prize personal
> possessions. These things made him distraught.
>
> I think his sentence was too harsh and if I had
> testified I believe my testimony would have helped the
> jury understand how the event happened, that Fallon's
> actions were on account of the drugs, and what kind of
> person Fallon really is.

(SHR 59-60.)

In his own affidavit, counsel responded to the allegation as follows:

> I am board certified in criminal law and have been
> a member of the Bar in Texas since May of 1985. I
> served as the elected District Attorney for the 355th
> Judicial District for sixteen (16) years and have
> served as a County Court at Law Judge.
>
> On January 29, 2013, I was called by Cindy Bishop.
> She requested that I represent her daughter, Kristin
> Bishop, who was under arrest in Hood County. Over the
> telephone, I was paid a retainer fee of $1,500.00.
> After checking local records, Kristin Bishop was
> arrested for a misdemeanor marijuana charge. Later that
> day, a detainer was placed upon her by the State of
> Virginia. I counselled with Granbury Police Department
> detective, Russ Grizzard and the County Attorney, Lori
> Kasper.
>
> The following day John Nel, an attorney from
> Virginia, contacted me. Mr. Nel requested that Ms.
> Bishop waive extradition and voluntarily return to

8

Virginia and bond out on local charges. After consultation, I agreed. Our County Attorney declined to prosecute the misdemeanor marijuana possession offense. Upon consultation with John Nel, extradition was duly waived. Ms. Bishop was not charged with any offense arising out of [petitioner]'s offense. The only contact this attorney had with Ms. Bishop was at the waiver hearing. No discussion was had with her regarding [petitioner]'s case.

On February 21, 2013, Jaye Howell reported that she was [petitioner]'s mother. Mrs. Howell paid a retainer and hired counsel to represent [petitioner]. A review of the investigation records indicated that Ms. Bishop was present when [petitioner] committed his offenses and reported that she had been with him for an extended time. Ms. Bishop reported to the investigator that she could not report where she and [petitioner] had been. She stated that [petitioner] had been arrested two (2) weeks before for weapon crimes and that he had been in possession of several weapons (including the one used in the instant offense) and that she could not remember any details.

I counselled with [petitioner] and Ms. Howell regarding the assistance I had provided to Ms. Bishop. Both of them concurred that the right decisions had been made on her behalf. At no time did the State ever inform trial counsel that Ms. Bishop was a target of the investigation with [petitioner]. During [petitioner]'s confinement, all of his mail and correspondence was monitored. I personally cautioned [petitioner] regarding this lack of privacy. Despite my warnings, he began corresponding with Ms. Bishop regarding a "plan" and actively enlisted her assistance in getting several male friends of his to aid in his plan. These letters spoke of flawless plans and the need for several people to assist. They were clearly written to circumvent the jail staff's efforts to determine what the plan was going to be.

On September 9, 2013, Officer Churchwell transported [petitioner] to a local dentist for treatment. These dental treatments were requested by [petitioner]'s mother, Jaye Howell. She demanded that these visits occur with this particular dentist. After leaving the dentist's office, [petitioner] attempted to confiscate the officer's gun and physically assaulted

9

her. [Petitioner] did not escape and the officer had minor injuries.

District Attorney, Rob Christian, through discovery, alleged that [petitioner], Ms. Bishop and others were complicit in a plan for [petitioner] to escape from custody. [Petitioner]'s letters were provided, to me, through such discovery. Mr. Christian disclosed telephone recordings of cryptic escape plans between [petitioner] and Ms. Bishop. I described these events to [petitioner] and Mrs. Howell in October of 2013, both in person and by telephone.

I was of the opinion that any evidence of an escape plan would be admitted against [petitioner] in his trial. I reported to [petitioner] and Mrs. Howell that if we called Ms. Bishop as a witness, the State could enter each and all of these letters as evidence of such a conspiracy. Without her testimony, the State would not be allowed to enter these letters because they could not authenticate them.

Before the trial, [petitioner] reported that he had discovered that Ms. Bishop was unfaithful to him. Mr. Hart had written to her cursing her and calling her vulgar names and ended the relationship. It was evident from my discussions with [petitioner] that Ms. Bishop would testify, if called as a witness, that the two of them had been doing an extraordinary amount of drugs for several weeks, had broken many laws including auto thefts, burglaries and weapon offenses. [Petitioner] desired to minimize his punishment for the instant offense because he was "on drugs" at the time of the offense and wanted Ms. Bishop to confirm that.

I was personally of the opinion that the benefits of having Ms. Bishop testify far outweighed any benefit such testimony could provide. I disagreed that a jury might, in any way, excuse [petitioner]'s offense because of his voluntary intoxication on drugs. I knew the State would introduce [petitioner]'s efforts to orchestrate an escape attempt and couple it with the attack upon Officer Churchwell. I believed the letters were supportive of such an allegation when so joined with [petitioner]'s actions.

I believed it likely that the trial court would not have allowed Ms. Bishop to testify upon seeing

those letters, without legal representation, out of respect for her rights to not incriminate herself or perjure herself before the court.

[Petitioner] agreed with me that Ms. Bishop would do more harm than good and [petitioner] told me that she was an "airhead", a heroin addict, not trustworthy and was totally unreliable.

[Petitioner]'s mother concurred with all the above, upon disclosing to her of the communications between [petitioner] and Ms. Bishop.

Ms. Bishop's mother, on several occasions, reiterated that Ms. Bishop would refuse to testify if called as a witness. Ms. Bishop remained incarcerated in Virginia. I was of the opinion, that Ms. Bishop's testimony would be adverse to my client's case. [Petitioner], Mrs. Howell and Ms. Bishop's mother all agreed. Therefore, as a matter of trial strategy, Ms. Bishop was not called to testify on [petitioner]'s behalf upon careful consideration and consultation.

(Supp. SHR 13-16.)

Under state law, an "actual conflict of interest" exists if counsel is required to make a choice between advancing his client's interests in a fair trial or advancing other interests to the detriment of his client's interests. (*Id.* at 21.) The state habeas judge, who also presided at petitioner's trial, credited counsel's testimony concerning the status of his professional relationship with Bishop and entered factual findings consistent with counsel's affidavit. (*Id.* at 18-19.) Based on those findings, and applying the *Strickland* standard, the court concluded that, in light of the totality of counsel's representation, petitioner failed to demonstrate the existence of an actual conflict of interest or that counsel's decision not to

11

call Bishop as a witness was "outside of the prevailing norm of sound trial strategy" and recommended that petitioner's application be denied. (*Id.* at 20-22.) In turn, the Texas Court of Criminal Appeals adopted those factual findings and denied petitioner's application without written order.[2] (*Id.* at 20-21.)

A state trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by a federal court. *Moore v. Johnson,* 194 F.3d 586, 605 (5th Cir. 1999) (citing *Marshall v. Lonberger,* 459 U.S. 422, 432 (1983)). It is clear the state habeas court found counsel's affidavit credible. This court may not reevaluate the conflicting affidavits or the credibility of the affiants. Thus, applying the appropriate deference to the state courts' factual findings and credibility determinations, the state courts' application of *Strickland* was not unreasonable.

Petitioner also claims that counsel was ineffective by failing to object to the trial court's refusal to allow his supporters to sit behind him at trial. (*Id.* at 8.) Counsel

---

[2]After the case was returned to the Texas Court of Criminal Appeals, petitioner filed objections to the habeas judge's order recommending denial and, in an apparent attempt to refute counsel's affidavit, included additional affidavits by him and his mother. (Resp't's Exs. 12, 14, 15.) There is no indication that the Texas Court of Criminal Appeals considered the affidavits on their merits. Therefore, this court assumes that the late-filed materials were not and, thus, are unexhausted for purposes of § 2254(b)(1)(A). *See Wheat v. Johnson,* 238 F.3d 357, 360-61 (5th Cir. 2001). Absent a showing of cause and prejudice, such showing not have been demonstrated by petitioner, this court is barred from considering the additional affidavits. *See Coleman v. Thompson,* 501 U.S. 722, 748-50 (1991).

12

responded to this claim as follows:

> Because of the security considerations, the State had extra security personnel in the building when the trial was conducted. There were extra security and bailiffs present in the courtroom during the trial. It was reported to me that spectators were not allowed to sit in proximity to [petitioner] during the trial. I perceived these circumstances were warranted out of security concerns that the bailiff had considered. Accordingly, I did not object. However, my client nor any observer during the trial, claimed to me that they believed the placement of the audience was adverse to my client. Witnesses were not allowed in the courtroom during the trial until they had testified, in accordance with the court's rulings. I can recall no one complaining to me of their placement other than [petitioner]'s mother and she was a witness in the case. No participant in the trial argued these circumstances to the Jury, nor was any attention drawn to it by the State. Trial Counsel did not object to the Bailiff's directions to leave the area adjacent to [petitioner]'s location vacant and did not consider it prejudicial to [petitioner]'s defense".

(Supp. SHR 16.)

Under state law, a trial court has broad discretion to control the orderly proceedings in the courtroom. (*Id.* at 21.) The state habeas court entered factual findings consistent with counsel's affidavit and, applying the *Strickland* standard, concluded that, in light of the totality of counsel's representation, counsel's decision not to object to the precautionary measure "was not outside the prevailing norm of sound trial strategy." (*Id.*) The Texas Court of Criminal Appeals, likewise, denied relief based on the habeas court's findings.

Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas-corpus relief on

13

the grounds of ineffective assistance of counsel. *Knowles v. Mirzayance,* 556 U.S. 111, 124 (2009). In petitioner's case, the additional security precautions in the courtroom were justified given his previous attempt to escape with the help of supporters on the outside. Counsel is not ineffective by failing to make frivolous or futile objections. *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990). Thus, applying the appropriate deference to the state courts' factual findings, the state courts' application of *Strickland* was not unreasonable.

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED March 20, 2018.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE